Maria A. VERBEECK et al., Libelants-Appellants,

v.

BLACK DIAMOND STEAMSHIP CORP., Respondent-Appellee.

AMERICAN SMELTING & REFINING CO. et al., Libelants-Appellants,

v.

BLACK DIAMOND STEAMSHIP CORP., Respondent-Appellee.

In re Petition of Skibs A/S JOLUND, as owner of THE BLACK GULL, Petitioner-Appellee.

No. 178, Docket 25387.

United States Court of Appeals Second Circuit.

Petition Filed July 2, 1959.

Decided Dec. 14, 1959.

---

3. See Hanna v. United States, 1958, 104 U.S.App.D.C. 205, 260 F.2d 723; United States v. Camara, 7 Cir., 271 F.2d 787,

**62**

Clark, Circuit Judge, dissenting.

Pyne, Brush, Smith & Michelsen, New York City (Warner Pyne, Dudley C. Smith, Albert Robin, and Edmund S. Purves, New York City, of counsel), for Skibs A/S Jolund, petitioner-appellee.

Bigham, Englar, Jones & Houston, New York City, for cargo claimants. Henry N. Longley and John W. R. Zisgen, New York City, Advocates, in opposition.

Abberley, Kooiman & Amon, New York City, for passenger claimants. John J. Abberley and Frank Marcellino, New York City, Advocates, in opposition.

Before CLARK, SWAN and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Upon the request of the proctor for Black Diamond Steamship Corporation for clarification of the opinion filed herein on November 4, 1959 and after hearing proctors for respective parties hereto, the said opinion of November 4 is vacated and withdrawn and this opinion is now filed as the opinion on the petition of Skibs A/S Jolund for a rehearing.

This court's decision in the first appeal, Petition of Skibs A/S Jolund, 250 F.2d 777, at 788, noted that "because of its findings that there was lack of proof of causation of the fire, the trial court considered it unnecessary to make a specific finding as to whether Capt. Svendsen was an executive officer, manager or agent." We then stated as a matter of law that if the trial court should find that the Captain was not "a general agent or managing officer, then the owner will be entitled to exoneration as against the cargo owners."

After remand the district court, again believing such a finding unnecessary, did not determine whether Captain Svendsen was a general agent or managing officer of the owner, but premised its decision upon a general conclusion that no liability had been established against charterer or owner of the vessel. In our original decision on the second appeal, by disagreeing with that conclusion, we have changed the situation. Although we adopted a rather radical position in drawing our own conclusions as to negligence on the part of the charterer, I am content with that part of the majority decision, but an entirely different situation exists when we attempt to make

findings as to Captain Svendsen's authority to bind the owner, after remanding for the very purpose of having the district court make the necessary findings. Finding 70 does not cure this defect because it only established Captain Svendsen's knowledge, not his authority to bind the owner. Finding 70 was before this court in the previous appeal. Had it had the effect of binding the owner, the court could not have taken the position expressed by Judge Pope, as mentioned above. I now believe that a majority of the court was wrong in saying that a specific finding as to Svendsen's position is unnecessary because, once negligence has been shown, the burden of proof of coming within the exemption of the Fire Statute is upon the owner. This situation, namely, the establishment of negligence, did not exist until we established it. Hence the owner has not had the opportunity of obtaining the finding which Judge Pope's opinion indicated was necessary.

Nothing is more important than that litigants have an opportunity to know the issues they must meet and then have an equal opportunity to meet them. I believe that the shipowner by the action of the court in the first appeal and by our action in the present appeal has been deprived of this right. Although this case has been pending a long time, further delay is comparatively unimportant in contrast to a decision which may be erroneous on the law and the facts.

Accordingly, the owner's petition for rehearing is granted but only so far as concerns the claims of the cargo owners; and the limitation proceeding instituted by Skibs A/S Jolund, the owner of the "Black Gull," is remanded as to claims of cargo owners for findings as to the personal negligence of the vessel owner in general, including findings as to Captain Svendsen's authority to bind the owner and as to the negligence or lack of it of Captain Wellton or any other representative of the vessel owner of such status that his negligence would be personal to the owner within the meaning of the Fire Statute, 46 U.S.C.A. § 182.

Pursuant to the opinion herein filed on June 18, 1959, the actions were remanded to the district court to fix the extent of liability. No further direction is necessary because in determining liability, if any, of the vessel owner to the cargo owners the determination will depend upon the findings of fact and the conclusions of law to be made by the trial judge on the remand for this specific purpose as herein directed. In all other respects liability has been determined in our opinion of June 18, 1959.

CLARK, Circuit Judge (dissenting).

This reversal of decision seems to me peculiarly regrettable for several reasons. The fire at sea causing the destruction of the Black Gull, with loss of life and cargo, occurred on July 18, 1952, and the litigants have already been compelled to wait many years for the adjudication of their rights. We gave this case the most careful attention when it first came to us in 1957; and in a notable opinion by Judge Pope, speaking for a unanimous court, we foreshadowed our ultimate conclusion that there was negligence on the part of the carrier and that this was a proximate cause of the loss. Petition of Skibs A/S Jolund, 2 Cir., 250 F.2d 777, certiorari denied Black Diamond S.S. Corp. v. American Smelting & Refining Co., 356 U.S. 933, 78 S.Ct. 772, 2 L.Ed.2d 763. When the case came back before us last spring, we again gave it our best attention and, in the state of the record presented by the parties, made the decision which in my view was the one required by both the law and the logic of our earlier decision. Verbeeck v. Black Diamond Steamship Corp., 2 Cir., 269 F.2d 68.[1] There has been absolutely nothing additional or new presented, and I find it difficult to assign an excuse for

1. I cannot understand what is meant by the statement that we there adopted "a rather radical position." To apply the clear principles of law to the facts presented before us seems hardly a radical step for a judge.

this judicial vacillation. Surely it does not tend to inspire confidence in our adjudications.

Again the reason announced, to wit, a kind of estoppel against us based on two sentences of our earlier opinion removed from context, is disturbing. Even if the sentences were intended to have the compulsive force now attributed to them, I do not believe courts can thus condition themselves against doing what they believe the law to require and the litigants to deserve. I submit that a court cannot operate to do justice if it can thus become entangled in its own verbiage. But it seems to me (as a member of the court then sitting) that we intended no such ruling as is now asserted to freeze a situation we did not then foresee. What we actually did was merely to give the parties a chance at a further trial on an issue which we feared had not been thoroughly presented by them. Perhaps we were oversolicitous; at any rate when the parties, for their own practical reasons and with the permission of the trial judge, decided to go no further, we had surely given them every opportunity possibly called for to perfect their record. We cannot force parties to try a case in a particular way, especially when the desired evidence appears to be wholly lacking. Hence when they have done what they deem necessary, we then have the duty to go forward without further ado to the decision required by law on what is actually placed before us. That is why I believe the earlier opinion, far from compelling this result, does point by necessary deduction to our conclusion and decision of last June, 2 Cir., 269 F.2d 68. I suggest, therefore, that the present reversal is an attempt either to repudiate our earlier holding or at least to temporize in such a way as to lead us into a complete cul-de-sac.

For I think the partial new trial now ordered does not take account of either the practicalities or the law involved. But first let me acknowledge that the question stated for the retrial has now been freed of the improper and unfair limitations stated in the original opinion here withdrawn. There was no justification for making the issue here defined turn entirely upon the position of Captain Svendsen in the owner's hierarchy of servants without also re-examining the relation to this cause of Captain Wellton, Svendsen's superior and the head of the Marine Department of the shipowner's Norwegian manager. Svendsen was Wellton's assistant at the time of the fire and soon succeeded to Wellton's position on the latter's retirement. Although Svendsen's deposition was taken, there was no testimony from Wellton because of his retirement and because he was in very bad health. Svendsen's knowledge of the customary improper stowage of the inflammable naphthalene has of course been settled; the only question now possible is whether the shipowner may hide behind the contention that Wellton had authority over the stowing and the lack of testimony as to his knowledge excuses it from the cargo claim. (Admittedly the Fire Statute, 46 U.S.C. § 182, does not apply to the loss of life, and rehearing has therefore been denied—possibly somewhat anomalously in view of the present result—as to death claims and all claims against the charterer.) So retrial, if it be useful or even fair, must include the matter of Wellton's knowledge, and hence it was necessary to broaden the issue on remand as now stated.

Further, however, I suggest that ordering a retrial, even one thus properly expanded as fairness dictates, is to overlook the realities of the situation. The reason the question of Wellton's knowledge was not exploited before was undoubtedly because the evidence was not at hand or available. And we can expect that at this late date it cannot be provided. So after another year or so of delayed litigation we shall probably find ourselves exactly where we are now. And I do not see how we can face a conclusion of complete ignorance on Wellton's part in the light of the admission, nay contention, of the shipowner that there had existed a long practice in this port for stowage in this way. As Jolund notes

in its brief: "Black Diamond used this method regularly for over thirty years, upon hundreds of voyages carrying hundreds of thousands of tons of crude bagged naphthalene." Jolund cannot have it both ways; it cannot rely on the existence of a thirty-year custom to combat negligence while denying any knowledge of it upon the part of its responsible managers. As we pointed out, citing cases, a shipowner cannot avoid liability by the extent to which the officers of the managing company kept themselves in ignorance of its business. So I think that on this record Wellton's knowledge must also be considered settled.

But this now brings us to an important proposition of admiralty law which was thoroughly discussed in our opinion of last June, 2 Cir., 269 F.2d 68, with appropriate citations, and which is here repudiated with only an expression of personal opinion, without analysis or citation.[2] It has long been settled as to the similar exemption for the owner in the limitation statute, 46 U.S.C. § 183, that once negligence has been shown, the burden of proof of coming within the exemption is on the shipowner. While there is not the same amount of precedent as to exemption under the Fire Statute, yet, as a leading authority cogently points out and the cases do suggest, exactly the same reasons of policy and statutory interpretation require the identical rule here. See Gilmore and Black, The Law of Admiralty 705 (1957), citing cases. I am sorry that my brothers have refrained from any analysis of this question, so important as a matter of policy in the law of the sea. But the compulsion for the correct rule seems clear. Hence if any question could remain as to Wellton's knowledge it was up to Jolund to answer it; when it could not do so upon being given the opportunity, the decision properly went against it.

So I see no reason or indeed excuse for another trial and resultant long delay in the disposition of this appeal. Our decision was sound and should be reaffirmed. The petitions for rehearing, already denied in part, should be denied in toto.

**2.** The opinion says merely: "I now believe that a majority of the court was wrong in saying that a specific finding as to Svendsen's position is unnecessary because, once negligence has been shown, the burden of proof of coming within the exemption of the Fire Statute is upon the owner."